**DISTRICT COURT CHIEF JUDGE
AND
CLERKS ATTENTION REQUIRED**

FULTON LEROY WASHINGTON
Reg. # 08204-112
United States Penitentiary
3901 Klein Boulevard
Lompoc, CA. 93436



CLERK U.S. DISTRICT COURT

JUL 9 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. <u>CV-01-08491-DT</u> |
| Plaintiff-Respondent, | ) | <u>CR-96-0557-WMB-4</u> |
| | ) | 577 |
| vs. | ) | |
| FULTON LEROY WASHINGTON, | ) | <u>MOTION PURSUANT TO FEDERAL</u> |
| Defendant-Petitioner, | ) | <u>RULES OF CIVIL PROCEDURE 63,</u> |
| | ) | <u>60(b)(6), and 60(b)(4).</u> |

---

### MOTION FOR VOID JUDGEMENT OF DISTRICT COURTS
### FEBRUARY 2006 ORDERS DENYING HABEAS CORPUS RELIEF
### PURSUANT TO § 2255 AND RULE 59

---

**COMES NOW,** Fulton Leroy Washington, Defendant/Petitioner, herein, pro se' and respectfully moves this Honorable Court to entertain instant action pursuant to F.R.C.P. Rules 63, 60(b)(4) and 60(b)(6). In this action Washington does not seek to vacate the conviction or sentence, he merely ask that the February 2, 2006 and the February - 2006 Rule 59 orers of denial be vacated as void because the successor Judge acted in a manner inconsistent with the due process of law by making findings of facts and conclusions of law despite unfamiliarity with the case. Washington seeks to have the timely filed § 2255 motion proceed according to due process of law with a District Court, familiar with the case; the trial Judge prior

[1]

rulings; and the still disputed facts, between the defendant and the plaintiff allowing both sides to brief the court.

## I.

### INTRODUCTION

THE FOLLOWING EVENTS ARE ESSENTIAL TO A PROPER UNDERSTANDING OF THE ISSUES RAISED BY THIS MOTION:

(1) This is a case of both factual and actual innocence. A case that went to trial before a jury with three defendants, Hamilton, O'Neal, and Washington.

**SEE APPENDIX A**

(2) December 1996, Washington made timely trial request by **Motion** for jury to make drug and chemical quantity determination. It is Washington's contention based on In re **Winship, 25 L.Ed 2d 368**, and the fact that the Supreme Court ruled Apprendi is not new law, that denial of such request denied him the right to a fair trial under the Sixth Amendment, as well as, affected his sentence, **SEE APPENDIX B.**

(3) August 1998, Washington requested appellate counsel by written letter to raise jury determination of drug and quantities on direct appeal, **SEE APPENDIX C.**

(4) May 1999, Washington timely filed a direct appeal which was consolidated for review with appeals of co-defendants Hamilton and O'Neal, **SEE UNITED STATES v O'NEAL, 2000 WL 328110 (9th Cir., 2000),** Which appellate counsel refused, neglected or was not required to raise "as was found by the trial  Judge in facts and conclusions of law in **O'Neal's** § 2255" the issue of jury determinations of drug and chemical quantites on direct appeal, **SEE APPENDIX F PAGE 4.**

[2]

(5) June 2000, while Washington was on direct appeal, with case file and records still in the Ninth Circuit, the United States Supreme Court handed down his ruling in **Apprendi v. New Jersey**, 530 U.S. 466, SEE APPENDIX D.

(6) August 25, 2000 docket, Ninth Circuit issued its mandate to Washington's direct appeal, **SEE APPENDIX D**.

(7) October 2001, Washington timely filed a Habeas Corpus § 2255 seeking relief and review under factual and actual innocence, violation's of due process rights to a fair trial by court stipulating against Defendants will not have to government witnesses appear at trial, violation's of confron-tational rights, as well as, numerous other constitutional violations which are supported in brief by law, and evidence not adjudicated by successor Judge.

(8) August 2002, The United States Supreme Court and The United States Attorney [The Honorable Justice Suter and The United States Attorney Mr. Debreene] gave guidance to the lower courts and confirmed during the oral arguments of **United States v. Leonard Cotton**, 152 L Ed 2d 14-21, that Defendants who pre-Apprendi [Supra] requested jury to make determinations of facts which increase punishment would receive reversal on harmless error review, **See Appendix E**.

(9) July 2001, Trial Judge made findings of fact and conclu-sions of law, then entered order in **United States v. O'Neal**, [co-defendant] § 2255 proceeding that:

  A) Petitioner's **Apprendi** claim was not procedurally barred; page 4.

B) There is an <u>Apprendi</u> error under the Courts determination of drug quantity; page 5.

C) Error is not harmless in cases (such as Washington's Life Sentence) with sentence over 20 years authorized under section 841(b)(1)(c); page 6.

D) Certificate of Appealability would/should be issued; page 16. See **APPENDIX F.**

**(10)** January 2006, following numerous status request and the filing of a writ of mandamus, Washington was informed case has been re-assigned to District Court Judge Dickson Teverizian [Successor Judge].

**(11)** February 2006, Successor Judge entered order of denial to all of Washington's pending motions, denied COA after failing to adjudicate actual and factual innocence and two issues of right to confrontation, and informed Washington within denial Trial Judge had passed away or in the courts words, met his demise, **See APPENDIX G.**

**(12)** February 2006, Washington filed motion for reconsi-deration pursuant to F.R.C.P. Rule 59, which was also denied by Successor Judge.

**(13)** March 2006, Washington timely petitioned Ninth Circuit Court of Appeals for Certificate of Appealability (COA) which was denied.

**(14)** March 2007, Washington timely requested rehearing with suggestion for rehearing en banc to Ninth Circuit Court of Appeals.

[4]

**(15)** June 5, 2007, Ninth Circuit denied request for rehearing due to lack of counsel making request, **See APPENDIX M.**

II.

## TIMELINESS

" When a party timely presents a previously undisclosed fact so central to a litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under Rule 60(b)(6) is proper even though the original failure to present that information was inexcusable." See <u>Good Luck Nursing Home, Inc. v. Harris</u>, 636 F2d 572 (1980). Fed. Rules Civ. Proc. Rule 60(b), 28 U.S.C.A..

The Court here is presented with just such a case. This is a case of factual and actual innocence, which has never been reviewed or adjudicated and if the initial judgement of the Successor Judge is allowed to stand, Washington would be compelled to serve a life sentence without the possibility of parole for charges he is factually and actually innocent of.

**The previous undisclosed facts are:**

**1)** The sworn declarations and affidavits of co-defendants Hamilton and O'Neal professing  Washington's innocence, **See APPENDIX ⧸ ▲ A**

**2)** The government's physical surveillance notes giving the height description of missing suspect alleged to be Washington, never presented to the trial court or the jury, **See APPENDIX ⧸ H.**

**3)** California State Pre-trial transcript of government agents giving false testimony in an official proceeding by raising the height description of the missing suspect

[5]

from physical surveillance notes to match height of Washington. See APPENDIX # I.

4) A photo comparison of O'Neal's height, missing suspects height, and the actual height of Washington, See APPENDIX # J.

5) Pages of 1998 letter from Washington to appeal attorney requesting attorney to raise issue of jury determination's of drug and chemical quantities on direct appeal. See APPENDIX # C.

6) Discovery produced by co-defendants Hamilton and Rawls, recorded by the governemnt, never presented to trial judge or trial jury, that conspiracy to manufacture PCP only involved three people" ... This evidence supports and bolsters Washington's claim of factual innocence, See APPENDIX # K.

The assessment of a motion for relief from judgement under the various subsections of Rule 60(b) is committed, in the first instance, to the discretion of the District Court. Orner v. Shalala, 30 F.3d 1310 (10th Cir. 1994).

### III.

### ARGUMENT

A) Successor Judge Violated Rule 63 Creating A void Judgement On His February - 2006, Order's Denying Washington Habeas Corpus Relief Pursuant To 28 U.S.C. § 2255 and Rule 59.

Pursuant to Federal Rules of Civil Procedure Rule 63, if a Judge became unable to proceed after verdict or judgement, a successor judge could take over and resolve post-trial motions without automatically having to retry the case. Rule 63 was

[6]

substantially broadened in 1991 to allow successor judges to take over at any point after trial begins, thus creating a more "efficient mechanism" for completing interrupted trials without causing "unnecessary expense and delay." FED R. Civ. P. 63 advisory committee note (1991 Amendment ). However, recognizing that "injustice ... may result in the substitute judge proceeds despite unfamiliarity with the action," Id, Amended Rule 63 also imposes additional responsibilities on the successor judges.
**The rule now provides in part:**

> "If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and deter-mining that the proceedings in the case may be completed without prejudice to the parties."

Balancing efficiency and fairness, the new rule thus allows successor judge to avoid retrial, but only to the extent they ensure that they can stand in the shoes of the predecessor by determining that "the case may be completed without prejudice to the parties." The plain language of the amended rule indicated that the certification of familiarity requirement applies to **all cases** in which a successor judge  replaces another judge unable to proceed with a trial or hearing that has commenced. Canseco v. U.S., 97 F.3d 1224 (9th Cir., 1996). In the instant case, the successor judge violated FRCP Rule 63 in the following ways:

1) by failing expressly to certify his familiarity with the record;

2)  by failing to consider post-trial decisions, rulings and orders by the original trial court;

3) by failing to give opportunity for both sides to brief

[7]

the court (successor judge) on disputed facts;

4) by acting in a manner inconsistent with due process of law by failing to address all issues raised in § 2255;

5) by violating Washington's due process right to be heard by addressing only the issues in which the court would deny and not any of the issues in which relief could have been granted;

6) by failing to hold evidentiary hearing or allow defendant to present evidence which due process required once the issue of factual and actual innocence is raised.

7) by acting in a manner inconsistent with due process of law when adopting disputed facts as his own findings of facts and conclusion's of law, then attributing the disputed facts which are **the erroneous trial evidence of co-defendant O'Neal** (denial pages 16-18) as the trial evidence of Washington despite existing record of Washingtons direct appeal Rebuttal Brief; Washington's request for rehearing; Appeal attorney's declaration; co-defendants declaration's; Declaration of AUSA Yvette Palazuelos explaining at the time of filing the erroneous evidence, both her and AUSA Patrick Fitzgerald was overwelmed with work and engagements which is the apparent reason for misapplication of evidence. (emphasis added)

The original trial judge, being Chief Judge at the time, was personaaly aware of the trial evidence of O'Neal and the questionable evidence presented towards Washington, the cases pending in the District Court affecting AUSA Yvette Palazuelos and Patrick Fitzgerald, and would have clearly acknowledged and corrected

[8]

the misapplication of trial evidence that was presented before him in the post conviction § 2255 as error or misconduct.

Defendant Washington request that this Court recall as a witness the Assistant United States Attorney Yvette M. Palazuelos, who by her admittance in attached declaration **Appendix "L"**, is responsible for the introduction of the false evidence at issue in this case and the AUSA Patrick Fitzgerald who co-tried instant case, both of who's testimony is material to the courts determination of facts and conclusion of law. There is no undue burden to the AUSA or their office to testify before the Court or correct the miscarriage of justice which has occurred in this case by their misapplication of trial evidence and their agents false testimony in state court proceedings. All executives and judicial officers are bound by oath or affirmation to support the Constitution of the United States, the rights of the people and not to present false, misleading or inconsistent evidence in an official proceeding. It is consistent with due process of law and without undue burden to correct the false and misleading evidence by calling the Assistant United States Attorney's as witnesses before the new COurt and successor judge. **See United States Constitution Fifth Amendment and Article VI, cl 3 n 1, 2;** see also <u>Silva -v- Woodford</u>, 279 F.3d 855 (9th Cir., 2002).

The district court must hold an evidentiary hearing on actual and factual innocence. Whatever latitude successor judge may have to determine credibility from record, in context of reviewing original judges records, or in context of making new findings, the plain language of FRCP Rule 63 controls. Thus, if party request, successor judge must recall any witness whose testimony is material

[9]

and without undue burden. <u>Mergentime Corp. -v- Washington Metro.</u>
<u>Area Transit Auth</u>., (1990, App DC) 334 US App DC 294, 166 F3d
1257, 43 FR Serv 3d 234.

**B) Successor Judge Violated Due Process By Failing To Adju-
dicate Washington's Actual and Factual Innocence Issue.**

The Successor Judge did not act in manner consistent with due
process law when he denied habeas corpus relief without addressing
the claim of actual and factual innocence.

"One of the principle functions of habeas corpus [i]s to assure
that no man has been incarcerated under a procedure which creates
an impermissible large risk that the innocent will be convicted."
<u>Bousley -v- United States, 523 U.S. 614, 620 (1998)</u>.

This is extremely important in instant case when successor judge
is unaware of the pre-trial fact that **all** co-defendants though
their attorney's informed the trial judge of Washington's lack
of Culpability in this case, and Washington does not match the
height description recorded by agents, this testimony was blocked
from the jury due to threats by the U.S. Attorney of enhancements
to their sentences if they testified such to the jury, see **Smith
-v- Baldwin**, 466, F.3d 805, 824 (9th Cir., 2006).

These threats caused all co-defendants to invoke their Fifth
Amendment right not to testify before the jury, **See Appendix #A.**
Due process requires that Washington be allowed to prove his inno-
cence. <u>Jaramillo -v- Stewart</u>, 340 F3d 877, 882-83 (9th Cir., 2003).

Washington herein requests this court to hold hearing to
make the necessary credibility determinations of the government
and defense witness, as well as, the sworn affidavit and declara-
tion filed by co-defendants; appeal attorney; and Assistant United
States Attorney's of record.

[10]

**C) Successor Judge's Failure To Consider Trial Judge's Post-conviction Rulings.**

The Successor Judge in instant case acted in a manner inconsistent with due process of law when he failed to consider trial judges post-conviction rulings relating to procedural default on Apprendi claims and whether Apprendi applied to the facts of Washington's case, which was pre-determined in United States -v- O'Neal, CA No. 97-50498, case consolidated with Washington's case on direct appeal.

An example of this is as follows:

> On pages 5-6 of the Successor Judges Order of denial which deals with procedural default rule, the Successor Judge, states:

> "At least eight circuits have held that Apprendi claims are subject to the procedural default rule and not a single circuit has held otherwise. Although this Court is unaware of any published Ninth Circuit decisions of an Apprendi claim, the circuit has applied the rule to other types of constitutional claims."

Washington's denial page 5-6 at lines 11, 1-2 February 2, 2006.

Had the Successor Judge read and reviewed the record left behind by the trial court and reviewed the Court's Order denying O'Neal's § 2255 dealing with the procedural bar issue, the Successor Judge would have been aware Apprendi issues are not barred from relief in this case. The trial Court before he died, stated on page 4 at 22 the following:

> "Petitioner's (O'Neal) Apprendi claim is not barred because Apprendi was decided three months after the Ninth Circuit affirmed petitioner's conviction.Citing English-v- United States, 42 F3d 473, 481 (9th Cir., 1994) ("...Because the court in English found that failure to raise such a "futile" objection did not constitute a procedural default, and that therefore the cause and prejudice standard did not apply, petitioner's failure to raise this issue on direct appeal did not constitute a procedural default, the cause and prejudice standard does not apply, and the claim is not procedurally barred." (emphasis added).

[11]

O'Neal's denial pages 4-5, August 3, 2001.

The Successor Judge can not claim O'Neal's denial is not part of the record of Washington's case. The successor Judge cites <u>United States -v- O'Neal</u>, 2000 WL 328110 (9th Cir., 2000) as reverence of to Washington on pages 2-3, 8, 17, 20, of his denial making clear the court is associating the rulings of O'Neal with that of Washington. The court is clearly not acting in a manner consistent with due process of law and prejudicing Washington by changing from the trial courts rulings on an issue already RESOLVED making findings of its own without allowing both parties to brief the court.

**D) Successor Judge Acted In a Manner Inconsistent With Due Process Of Law By Failing to Address And Adjudicate Issues Raised Under Confrontation And Within Past Conviction Motions.**

Washington's factual innocence is interrelated to his issues raised under his constitutional right to confront witnesses. By the Successor Judge failing to adjudicate the issues he effectively prevents exculpatory evidence the testimony of co-defendants declarations which challenges the credibility of government witness. Such evidence was wrongfully excluded from trial by government misconduct and trial judges stipulation, **"which were entered against Washington's will"**, not to have government witnesses appear at trial. It was not consistent with due process of law for the Successor Judge to fail or refuse to address the claim of trial court entering and engaging into stipulations with the government against defendant's will. <u>Jaramillo -v- Stewart</u>, 340 F3d 877, 882-83 (9th Cir. , 2003). The Successor Judge also failed to adjudicate the issue's that the legal applicable sentence in this case has been

[12]

fully served, and the issue the trial court violated due process by allowing the government to introduce for sentencing a drug type never charged or tried before the jury.[1] These issues were renewed following the Ninth circuit Court of Appeals ruling in United States-v- Ameline, 376 F3d 967 and should have been adjudicated in the various post conviction motions as well as the § 2255. The legal applicable sentence was raised in motions for bond, review of sentence motion, and judicial notice, see also Supreme Court Standard; under Stewart-v-Martinez-Villaral, 523 US 632, 140 L.Ed 2d 849, 118 S. Ct. 1618, at 856.

> "...the District Court ruled (or should have ruled) on each claim at the time it became ripe. Respondent was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief."

---

[1] The issues was argued before the trial judge during sentencing hearings in which the then trial court mistakenly believed it had discretion under the then mandatory guidelines to create drug type and quantities at the governments request.

---

**E) Successor Judge Violated Washington's Due Process Rights and Rule 63 By Proceeding To Make Rulings Despite Not Fully Comprehending Arguments.**

Successor Judge violated Rule 63 and acted in a manner not consistent with due process of law, causing his ruling to be void pursuant to FRCP Rule 60(b)(4) when Successor Judge proceeded to make findings of fact and conclusions of law relating to 28 USC § 851 despite not fully understanding the argument before him. The Successor Judge acting within due process should have requested an evidentiary hearing or requested further briefing by both sides to clarify the courts understanding.

[13]

Federal Rules of Civil Procedure Rule 63 advisory Committee's note (1991 Amendment) states in part: "However, recognizing that injustice ... may result if the substitute judge proceeds despite unfamiliarity with the action," Id. <u>Mergetime Corp-v-WMATA</u>, 166 F3d 1257 (D.C. Cir., 1999), See also <u>Canseco v U.S.</u>, 97 F.3d 1224 (9th Cir., 1996) where the Ninth Circuit Court of Appeals, states: "Certification of familiarity applies to **all cases** in which a Successor Judge replaces another judge."

On page 8 of Washington's denial, the Successor Judge states: **"The Court does not fully comprehend Washington's argument."** To proceed despite understanding the argument and issues raised in the pleadings violates Washington's due process right to a fair hearing and must be reversed. See also <u>Johnson -v- Paradise Valley Unified School Dist.</u>, 251 F.3d 1229-30 (9th Cir. 2001).

[14]

IV

## CONCLUSION

Washington is prayerful this Honorable Court will consider the facts herein and **VOID** the **JUDGEMENT** entered February 2, 2006 and conduct fair hearings.


Dated: July _6th_ , 2007

*Fulton Leroy Washington*
Fulton Leroy Washington
Reg. # 08204-112


FCC Lompoc Medium
3901 Klein Blvd.
Lompoc, Ca. 93436

[15]

## CERTIFICATE AND PROOF OF SERVICE

I hereby certify that I have placed a true and correct copy of the attached **MOTION FOR VOID JUDGEMENT OF DISTRICT COURTS FEBRUARY 2006 ORDER DENYING HABEAS CORPUS RELIEF PURSUANT TO § 2255 AND RULE 59 AND APPENDIX** in the United States Mail at FCC Lompoc/ US Penitentiary 3901 Klein Blvd. Lompoc, CA. 93436, First Class Postage prepaid and addressed the same to:

Clerk of the Court
United States District Court
312 North Spring Street
Los Angeles, CA. 90012

AUSA Yvette M. Palazuelos
Assistant U.S. Attorney
Criminal Section
1500 U.S. Courthouse
312 North Spring Street
Los Angeles, CA. 90012

Patrick R. Fitzgerald Esq.
USLA - Office of the U.S. Attorney
Criminal Division
Suite 1200 312 N. Spring St.
Los Angeles, CA. 90012

at their last known address, at which place there is delivery service by United States Mail.


Dated: July _6th_ , 2007          Signed: _Fulton Leroy Washington_
                                          Fulton Leroy Washington
                                          Reg. # 08204-112
                                          U.S. Penitentiary
                                          3901 Klein Blvd.
                                          Lompoc, CA. 93436

Fulton Leroy Washington
I.D. No. 08204-112
U.S. Penitentiary-Lompoc
3901 Klein Boulevard
Lompoc, CA  93436


IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States Of America<br>Plaintiff - Respondent, | ) <br> ) <br> ) | Case No. <u>CV-01-08491-DT</u><br><u>CR-96-00557-WMB-4</u> |
| vs | ) <br> ) | APPENDIX FOR |
| Fulton Leroy Washington,<br>Defendant - Petitioner | ) <br> ) | Federal Rules of Civil Procedure<br>Rule 63; 60(b)(6), and 60(b)(4) |

_____

Appendix For
Motion to Void Judgement of District Courts February 2, 2006
§2255 and February    2006 Rule 59 Orders Denying Habeas Corpus
Relief

_____


Dated: July  6 , 2007

Respectfully Submitted,

_Fulton Leroy Washington_
Fulton Leroy Washington

## TABLE OF CONTENTS

### FOR APPENDIX

Appendix   A.   Sworn affidavits and declaration of codefendants John O'Neal and Fred Hamilton and counsel of record Karen R. Smith.

Appendix   B.   Washington's pre-Apprendi trial filing of motion requesting jury to make drug and chemical quantity determinations.

Appendix   C.   Washington's pre-appeal letter requesting appellate counsel to raise on direct appeal issue of jury determinations of chemical and drug quantities.

Appendix   D.   August 25, 2000 docket sheet entry showing Washington was on direct appeal in the Ninth Circuit when the Supreme Court handed down its ruling in Apprendi.

Appendix   E.   Copy of pages 15-16 of oral arguments of United States -v- Leonard Cotton, 152 LEd 2d.

Appendix   F.   Pages 4,5,6 and 16 of trial judges order of denial in consolidated case of United States -v- O'Neal.

Appendix   G.   Notice of trial judges death and incorporated denial of all pending motions - §2255.

Appendix   H.   The government's physical surveillance notes giving the height description of missing suspect alleged to be Washington.

Appendix   I.   California State Pre-trial transcript's of government agents giving false testimony in an official proceeding by raising the height description of the missing suspect from physical surveillance notes to match height of Washington.

Appendix   J.   Photo comparison of O'Neals height, missing suspects height, and the actual height of Washington.

Appendix   K.   Monitors notes of phone conversation between Hamilton and Rawls.

Appendix   L.   Sworn Declaration of Assistant United States Attorney (AUSA) Yvette M. Palazuelos.

Appendix   M.   June 5, 2007, 9th Circuit denial of rehearing/rehearing en banc due to lack of counsel and February 1, 2007, denial of COA.



John O'Neal 11127-016
F.C.I. P.O. Box 5000
Sheridan, Oregon 97378

Judge Pregerson

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE: FULTON WASHINGTON
( UNITED STATES v O'NEAL, et al)

)
)
)
)
)
)
)
)
)

CASE NO. CR 96-557-(3) WMB

Judicial Notice under Fed. R. of Evid.

Comes Now John O'Neal, codefendant of Fulton Washington and
Fred Hamilton, and hereby respectfully submit the following original
sworn affidavits attesting to Fulton Washington's innocense . As these
two affidavits will attest to and as Mr Washington has been averring
to this court, and to the best of my belief and knowledge submit these
two affidavits under Federal Rules of Evidence 201. Because we have
been incarcerated in separate institutions I had finally received an
an approval to communicate with Mr Hamiliton.  I received this sworn
affidavit from him and am now placing it before this court. I am re-
questing that this court take notice under F.R.E. 201 (d).

February 14, 2007

Respectfully submitted,

John O'neal
John O'Neal

JUDICIAL NOTICE F.R.E 201 (d)  -1.of-1.

## SWORN AFFIDAVIT OF JOHN E. O'NEAL

I hereby certify that I have made the following statements under the penalty of perjury of the laws of the State of California and these United States of America:

1.      On February 13, 1996, I was at my Haines Street residence having just returned from the chemical store. When I returned, waiting at my front door, was my alleged co-defendant, Fulton Leroy Washington.

2.      Mr Washington had came over to my Haines Street residence in order to use my 3/4 ton pick-up truck to do a job for me at my actual residence which was to install a circular driveway and a path way to my barn.

3.      It was only by mere happenstance that he was at the Haine Street location that particular day and evening, because I had actually requested that he spend the night, rather than make the long drive as he had some problems with night blindness. Aside from which we had also made plans to visit several locations in which there were vintage automobiles that we wanted to peruse on the morning of the following day, February 14, 1996.

4.      As planned, the next morning we made the rounds to various car lots and other locations looking at vintage automobiles. Upon our return, we were arrested by federal officers and detained being brought back to Haines Street residence and questioned.

5.      A reveiw of the sentencing record will demonstrate the fact that Mr Washington had nothing to do with any of my activities in the drug business. I had made reference to this in that prior proceeding and it is these facts that I hereby attest and certify on these statements herein made to this court. Mr Washington is innocent of any wrongdoing and it is my belief that he is falsely imprisoned and his conviction is unjust. Furthermore I have never even discussed any such matters with Mr Washington whatsoever prior to our arrest.

6.      I have been threatened by the prosecutor that if I gave testimony of Mr Washington's innocense that they would attempt to enhance me using prior convictions. Although I have already stated that Mr Washington was innocent of these charges, I am making a clear and

concise statement of these facts and surrounding circumstances that allowed Mr Washington to be arrested on that fateful day on February 14, 1996.

7.   Although I have exonerated Mr Washington at my sentencing hearing, I freely give to Mr Washington, this statement in order that he may present all of the evidence that would assist him in his current 28 U.S.C. § 2255 Motion  before this court.


March 20, 2006 at Sheridan, Or.
date and place where signed

Respectfully Submitted,

John E. O'Neal
John E. O'Neal


## NOTARY PUBLIC STATEMENT

SUBSCRIBED and SWORN to before me this ___day of March, 2006.


NAME: _____

Notary Public in and for the State of Oregon residing at

_____

My Commission expires:_____


Signature/Case Manager   3-20-06
"Authorized by the Act of July 27,
1955 to administer oaths
(18 USC 4004)."

39

CERTIFICATE OF SERVICE BY MAIL

I hereby certify that I have placed one true and correct copy
of this Judicial Notice under F.R.E. 201 (d) in the United States Mail
postage at Sheridan, Oregon on this 14th day February, 2007, first class
postage prepaid and attached to the following address;

        Thomas P. O'Brien.
        Asst U.S. Attorney
        1500 U.S. Courthouse
        312 North Spring Street
        Los Angeles, Ca. 90012


        John O'Neal   11127-016
        F.C.I. P.O. Box 5000
        Sheridan, Oregon 97378

CERTIFICATE OF SERVICE BY MAIL: -1.

SWORN DECLARATION OF FRED HAMILTON

I HEREBY CERTIFY THAT I HAVE MADE THIS DECLARATION UNDER THE
THE PENALTY OF PERJURY OF THE LAWS OF THE STATE OF CALIFORNIA.

1.   At all times material hereto I have been aware and have so
stated that my co-defendant, Fulton Washington was not a party to the
drug conspiracy charges that John O'Neal and  I were tried for under
case no. CR-96-557-WMB-4 in Federal District Court in Los Angeles,
California.

2.   I am aware of the fact that John O'Neal has given a sworn
affidavit in support of Fulton Washington's actual innocense claim and
of the crimes that we were tried for,  further Mr Washington had no
agreement with us that he would commit any crimes whatsoever.

3.   I was also told by the prosecutor that if I testified for
Mr Washington, that he would attempt to enhance me using prior
convictions.

4.   In fact all of the co-defendants wanted to plead out with
the exception of Mr Washington because he was actually innocent of the
charges that he was being tried for and that he wanted to go to trial.
Further,with the exception of Mr Washington, it was our intent to plead
guilty and preserve our appeal rights on a quantity issue only.

5.   As a matter of fact,  I did not even meet Mr Washington
until after we had become incarcerated together at the Federal Detention
Center in Los Angeles.  If we would have been allowed to testify at
the trial, the outcome for Mr Washington, would have produced an
innocent verdict at trial.

6.   Although Mr O'Neal has given a sworn statement on behalf
of Mr Washington, I believe that I should personally step forward and
give this statement in order that Mr Washington could be exonerated
of a crime that he did not participate in whatsoever.

020807
Date signed & filed.

                                        Respectfully submitted,

                                        Fred Hamilton
                                        Fred Hamilton

Subscribed and sworn to me by

STEPHANIE RAMIREZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
AUGUST 23, 2008

                    -1 of 1-         Notary Public

EXHIBIT 3

## DECLARATION OF KAREN R. SMITH

I, Karen R. Smith, declare and depose that:

1. I am an attorney duly licensed in the State of California (state bar card number 55136), former member of the Federal Indigent Criminal Defense Panel of the Central District of California. In January 1997, I was appointed by the late Federal District Judge William Matthew Byrne, Jr. to represent indigent federal defendant Fulton Washington for sentencing purposes in his federal criminal prosecution. I am also the attorney who prepared and filed Fulton Washington's federal criminal appeal in Case No. 97-50539.

2. I have been contacted by Fulton Washington following the denial of his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. Section 2255. I am aware that Fulton Washington filed this motion in October 2001 and that the late Judge Byrne had not ruled on it for over four years. Judge Byrne, however, passed away in mid-January 2006 and the matter was reassigned to Judge Tevrizian of the Central District. On February 1, 2006, Judge Tevrizian denied Fulton Washington's motion and ruled against Mr. Washington on related matters.

3. I submit this declaration in support of Fulton Washington's motion for a certificate of appealability and appointment of counsel. I have read the district court order denying Washington's 2255 motion and I am struck that the "draconian" result the district court predicted is unjustified in light of the facts and law at issue in this case. Fulton Washington is gravely prejudiced without counsel appointed on his behalf.

1

Since issues of "cause and prejudice" have been raised now by the district court regarding possible procedural default, Fulton Washington is ill-equipped as a incarcerated inmate in Florence, Colorado to properly protect his constitutional rights and appeal his case. In fact the policy of the institution where is housed limits his access to files and records of the trial. Despite the fact that Washington has represented himself in this matter, he is allowed to keep a limited amount of material in his possession; therefore he does not have access to all the documents constituting discovery and evidence presented by the government in this case.

4. In light of the issues raised by Mr. Washington I, as his former attorney, have a potential conflict and cannot represent or counsel him to any degree in this matter. This Honorable Court, however, can protect his rights by appointing counsel to represent Washington or act as state-by counsel in this matter.

5. My quick review of the district court order denying Washington's motion shows that the court, being unfamiliar with the trial record and facts, has adopted inaccurate erroneous facts about the evidence of guilt introduced against Washington at trial. The Ninth Circuit in its opinion erroneously used these same facts when it ruled in March 2000. When I filed a petition for rehearing, I did identify the inaccurate information. The petition, however, was denied and no correction was made at the time. The February 2006 order denying the §2255 motion, reveals that the district court did incorporate this incorrect information in its ruling. I am concerned that Fulton Washington has been deprived of a fair adjudication of at least some of these claims. Moreover the serious issue of procedural default regarding a legitimate Apprendi issue requires careful review by this court.

6. Since I believe that Fulton Washington's claims have not been fairly adjudicated under these unusual circumstances, I support Fulton Washington's request for a certificate of appealability and appointment of counsel.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge. Executed this 28th day of March 2006 in Los Angeles, California.

Karen R. Smith



1  of Washington's claim, the Court must find that either: (1) Washington raised an

2  Apprendi claim on direct appeal, or (2) he can establish cause and prejudice for

3  failing to do so.

4              (i).    **Did Washington raise an Apprendi claim on direct**
                       **appeal?**
5

6      It is clear that Washington raised an Apprendi claim at the trial level. In a

7  post-conviction, pre-sentencing motion, Washington argued that "quantity is a

8  substantial factual issue which should be given full consideration by the jury in

9  order to give defendants who are charged under § 841(a) full and fair hearing."

10 See Def. Reply, Ex. 2 at 9. The motion further requested "the selection and use of

11 jury to determine quantity prior to sentencing." Id. at 11.[6]

12     However, it is equally clear that Washington's attorney did not raise this

13 issue on appeal. The only portion of Washington's appellate brief that references

14 the issue of drug quantity is Subsection G, which is entitled "District Court Erred

15 When It Based Its Quantity Calculations on Speculation In Violation of Due

16 Process and The Federal Sentencing Guidelines." Subsection G argued that:

17         Washington challenges the unorthodox, speculative method used by

18         the district court in reaching the quantity calculations of contraband.

19         The district court "invented" a number for the quantity and confused

20         actual and potential yield analysis. This approach violated the

21

22 unless the petitioner shows cause and prejudice." Massaro, 538 U.S. at 504; see also

23 Dretke, 541 U.S. at 388; Bousley, 523 U.S. at 622. This is directly contradictory to
   English, which made procedural default the exception, rather than rule. Furthermore,

24 several Ninth Circuit opinions issued after English have held that procedural default

25 applies "[i]f a criminal defendant could have raised a claim of error on direct appeal
   but nonetheless failed to do so." Skurdal, 341 F.3d at 924; Ratigan, 351 F.3d at 962;

26 Mejia-Mesa, 153 F.3d at 928. It is clear that this extensive subsequent case law has

27 overruled English.

28         [6] Washington raised these arguments in a pro se motion.

                              - 7 -



```
                        FULTON WASHINGTON
                        REG. NO. 08204-112
                        P.O. BOX 1000
                        LEAVENWORTH, KANSAS
                                   66048-1000


                        AUGUST 18, 1998


ATTORNEY-AT-LAW
KAREN SMITH
675 WESTMORELAND AVE.
LOS ANGELES, CALIFORNIA 90005
```

RE: ISSUES FOR DIRECT APPEAL, CASE NO. CR-96-557 WMB

DEAR KAREN,

I have prepared this list of issues I wish to raise on direct appeal and reserve for future attacks. Following your advice I did the best I could to keep them in the three areas; pretrial, trial and sentencing. Many of the issues overlap one another and so do the case law I've provided. The court records and the results from the investigation should connect to everything else.

I hope to be able to go over these during your visit the week of august 17th.

<u>PRE-TRIAL</u>

1. Working agreement/arrangement between federal and state officials.

<u>Anderson v. U.S.</u>, 318 U.S. 350 (1943); <u>U.S. v. Broadhead</u>, 413 F.2d 1351 (7th Cir. 1969) denied, 369 U.S. 1017 (1970); <u>Gambino v. U.S.</u>, 275 U.S. 310, 314, 48 S.Ct. 137, 72 L.Ed. 293; Title 18 F.R.Cr.P, Rule 5; <u>U.S. v. Brown</u>, D.C. Ga. 1969, 305 F.Supp. 299.

2. Lack of probable cause for arrest, transportation and detention-State and Federal.

<u>Rohde v. City of Roseburg</u>, 9th Cir., argued September 9, 1997; <u>Joe Hayes v. Florida</u>, 470 U.S. 811, 84 L.Ed.2d 705, 105 S.Ct. 1643; <u>Wong Sun v. U.S.</u>, 371 U.S. 471, 479 (1963).

-8-

5. COURT NOT RULING ON FACT FINDING ON "JURY FOR DETERMINING QUANTITY OF DRUGS' FOR SENTENCING-

6. TRIALS/GOVERNMENT'S FAILURE TO PROVE ANY OVERT ACT OR ROLE IN CONSPIRACY-

Court's comment: "We don't know what you did or what your role was-but based on your priors I believe you were involved." Accord: U.S. v. Simpson, 93-1353 (1994) CA 9, 10 F.3d 645; U.S. v. Shabani, 993 F.2d 1419, 53, Cr.L. 1177 (CA 9, 1993); Hook v. McDade, 89 F.3d 350, 354 (7th Cir 1996).

7. COURT DENIAL OF DEFENDANT'S FIRST MOTION FOR NEW COUNSEL-

8. COURT'S DENIAL OF DEFENDANT'S MOTION FOR ACQUITTAL OR NEW TRIAL-

9. COURT'S COMMENTS: "YOU GOT PRIORS YOU GOING TO GET SENTENCED AND YOU AIN'T GOING TO LIKE IT!!" accord: Hook v. McDade, 89 F.3d 350, 354 (7th Cir 1996) cert. denied 117 S.Ct. 718 (1997).

10. THE COURT'S VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY MAKING DEFENDANT MAKE A DEAL NOT TO TALK IN COURT OR FILE ANYTHING ELSE IN RETURN FOR NEW ATTORNEY-

11. THE COURT MAKING NEW APPOINTED ATTORNEY AGREE TO LIMITED DEFENSE AS TO DEFENDANT'S PRIOR TO HER APPOINTMENT.  AGAIN VIOLATING CONSTITUTIONAL RIGHT TO FULL AND EFFECTIVE REPRESENTATION-

12. COURT'S ADMITTING INTO EVIDENCE LATENT FINGERPRINT FROM PRETRIAL DESTROYED EVIDENCE; NONE DANGEROUS-

See: Townsley v. U.S., 236 A.2d 63, 65 (D.C. 1967); Patten v. U.S.

248 A.2d 182, 183 (D.C. 1968); Eorum v. U.S., 127 U.S. App. D.C. 48, 380

F.2d 595 (1967); Haskins v. U.S., 329 A.2d 781 (D.C. 1974); Hayes v.

Florida, 470 U.S. 811, 84 L.Ed.2d 705, 105 S.Ct. 1643.

13. IN COURT IDENTIFICATION'S OF FEDERAL AND STATE COURT'S-

U.S. v. Smith, 154 U.S. App DC 111, 473 F.2d 1148 (1972); U.S. v.

Caldwell, 151 U.S. App. DC 84, 465 F.2d 669 (1972); U.S. v. Ash, 149 U.S.

App DC 1, 461 F.2d 92 (1972)

                              SENTENCING

1. COURT'S FAILURE TO ADDRESS ISSUE OF JURY TO DETERMINE DRUG QUANTITY

FOR SENTENCING-


2. COURT'S FINDING OF QUANTITY OF PCP FROM EVIDENCE THAT WAS DESTROYED

ILLEGALLY AND WAS NOT PART OF THE HAMILTON CONSPIRACY-


3. COURT'S FINDING OF ACTUAL PCP WHEN NO PCP WAS PRESENT OR TESTED FOR

PURITY-


4. COURT'S FINDING OF QUANTITY OF "ACTUAL PCP" AND "LIQUID PCP" WITHOUT

INTRODUCTION OF FORMULA-


5. COURT'S FINDING OF QUANTITY OF DRUGS TO BE MANUFACTURED BASED ON

CHEMICAL OF UNDETERMINED WEIGHT OR VOLUME-


6. THE COURT'S SENTENCING FOR A HYPOTHETICAL PCP AND NOT PCC OR IT'S

PRECURSOR PIPERDINE WHICH CARRIED GUIDELINE SENTENCES-



Proceedings include all events.                                    REOPEN
2:96cr557-4 USA v. Hamilton                                        APPEAL

4/29/99   381     TRANSCRIPT DESIGNATION filed by Fulton Leroy Washington for
                  transcript of 3/12/99, CR: Irene Nakamura referencing
                  appeal [294-1], appeal [288-1]. (weap) (app)
                  [Entry date 04/29/99]

6/7/99    382     RECEIPT for Transcripts of proceedings  held on: 3/12/99,
                  C/R: Irene Nakamura (ghap) (app) [Entry date 06/14/99]

6/7/99    --      TRANSCRIPT filed for proceedings held on 3/12/99 as to
                  Fulton Leroy Washington. (ghap) (app) [Entry date 06/14/99]

6/15/99   383     TRANSCRIPT DESIGNATION filed by Fulton Leroy Washington as
                  to Fulton Leroy Washington for transcript of 4/6/99 CR:
                  Walter Ledge referencing appeal [288-1]. (USCA No.:
                  97-50539) (ghap) (app) [Entry date 06/15/99]

7/9/99    384     RECEIPT for Transcripts of proceedings  held on: 4/6/99
                  C/R: WR Ledge (ghap) (app) [Entry date 07/13/99]

7/9/99    --      TRANSCRIPT filed  for proceedings held on 4/6/99 as to
                  Fulton Leroy Washington. (ghap) (app) [Entry date 07/13/99]

5/8/00    --      LODGED order from USCA as to Frederick Lamar Hamilton, John
                  Eric O'Neal, Fulton Leroy Washington  referencing appeal
                  [294-1], appeal [293-1], appeal [286-1].  Directing that
                  Jgm of said Dist Crt hereby is reversed and remanded. (USCA
                  NO.: 97-50498, 97-50501 & 97-50539)  (pjap) (app)
                  [Entry date 05/18/00]

6/12/00   387     BRIEF filed by USA as to Frederick Lamar Hamilton re sent
                  of dft Hamilton following rmd from 9th CCA. (step)
                  [Entry date 06/13/00]

7/20/00   --      LODGED JUDGMENT from USCA as to Fulton Leroy Washington
                  referencing appeal [294-1] .  Directing that dist crt
                  hereby affrm. ( USCA NO.: 97-50539) (ghap) (app)
                  [Entry date 07/26/00]

8/25/00   394     MINUTES OF FILING AND SPREADING JUDGMENT held  before Judge
                  William M. Byrne Jr.  as to Fulton Leroy Washington : The
                  Court orders that the mandate of the USCA Affirming the
                  appeal [288-1] is hereby filed and spread upon the minutes
                  of the Court.   Entered on: 8/28/00 (es)
                  [Entry date 08/28/00]

8/25/00   395     CERTIFIED COPY OF JUDGMENT from USCA as to Fulton Leroy
                  Washington affirming the decision of the District Court on
                  appeal [288-1]  (cc: all counsel) .  Entered on: 8/28/00 (es)
                  [Entry date 08/28/00]

9/12/00   399     MOTION filed by Fulton Leroy Washington for furnishing of
                  investigative and surveillance notes. (step)
                  [Entry date 09/26/00]



1    underlying offense but still have a doubt about drug

2    quantity, then the Government would be entitled to a

3    lesser included offense.

4         QUESTION:  Lesser included offense.

5         MR. DREEBEN:  Correct.  And -- and the lower

6    courts have understood that that's the appropriate

7    analysis in a case like that.

8         QUESTION:  I guess part of the problem in this

9    case is that if we say that defendants are entitled to the

10   benefit of a change in the law before their conviction

11   becomes final, there's not much you can do because you'd

12   have to issue a superseding indictment and you can't do

13   that.

14        MR. DREEBEN:  We can't do it in this case,

15   Justice Kennedy, which is why, in effect, the result that

16   the court of appeals achieved is a tremendous windfall for

17   the defendants.  They never raised a constitutional

18   objection at trial.  They never contested the amount of

19   drugs involved in the offense.  The statute clearly

20   authorizes a life term for the conduct that was proved,

21   and the evidence supports that --

22        QUESTION:  Well, I -- I don't know they'd

23   object.  Does he stand up during the prosecution's case

24   and say, well, we just want you to know that you're not

25   doing a very good job of proving the amounts?  I mean,

A Henson Reporting Company
1111 14th Street N.W. Suite 400  1-800-FOR-DEPO  Washington, D.C. 20005

1    what's -- what's he supposed to do?  That -- that -- I

2    don't understand when the objection would take place.

3              MR. DREEBEN:  Well, the objection could take

4    place at trial when a defendant could have said the

5    Government has to prove this quantity up to the jury or it

6    could --

7              QUESTION:  No, but it -- it doesn't.  I mean,

8    the -- the point at which the -- the failure to indict and

9    allege on quantity becomes objectionable is at sentencing.

10             MR. DREEBEN:  Well, that's --

11             QUESTION:  So, there would be no reason to.

12             MR. DREEBEN:  That was just what I was about to

13   say, Justice Souter.  The -- the most pertinent time for

14   the defendant to object would be at sentencing, and there

15   are defendants who raise the kind of constitutional

16   objection that this Court alluded to in the Jones decision

17   in 1999 and later accepted in the Apprendi decision in the

18   year 2000.  There were defendants who raised that

19   constitutional objection, and they are entitled to the

20   benefit of harmless error review.  Those defendants who do

21   not raise that constitutional claim are subject to plain

22   error review.  And this Court has repeatedly recognized

23   that even the type of error that might entitle a defendant

24   to reversal on harmless error review, regardless of the

25   strength of the evidence, does not automatically entitle

A Henson Reporting Company
1111 14th Street, N W .Suite 400  1-800-FOR-DEPO Washington, DC 20005



1    determine sentencing under section 841 is such a fact, and has overruled prior precedent

2    holding that a defendant's sentence can be based on a judge's finding under a preponderance

3    of the evidence standard. United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000).

4         The facts found by the jury only supported sentencing under 21 U.S.C. §

5    841(b)(1)(C), which governs possession of any detectable amount of a schedule II controlled

6    substance, and which provides for a maximum penalty of 30 years for defendants having a

7    prior conviction for a felony drug offense. Because the Court found petitioner responsible

8    for approximately 108 grams of PCP, he was instead sentenced under 21 U.S.C. §

9    841(b)(1)(A)(iv), which governs possession of 100 grams or more of PCP, and which

10   provides for a minimum sentence of 20 years to a maximum of life with a prior felony drug

11   conviction. Petitioner argues that he was sentenced in violation of Apprendi because he was

12   exposed to a higher maximum penalty as a result of the Court's findings, and because the

13   Court felt compelled to impose a 20-year mandatory minimum sentence under section

14   841(b)(1)(A), which exceeded the high end of the appropriate Guidelines range.

15       **1.    Procedural Bar**

16       The government first argues that petitioner's claim under Apprendi is procedurally

17   barred because petitioner did not raise on direct appeal any claim that the type or quantity of

18   drugs at issue had to be proved beyond a reasonable doubt. The government contends that

19   pursuant to United States v. Frady, 456 U.S. 152, 166 (1982) and United States v. Johnson,

20   988 F.2d 941, 945 (9th Cir. 1993), such a claim may not be raised on collateral review unless

21   the petitioner can show cause excusing this failure and prejudice resulting therefrom.

22       Petitioner's Apprendi claim is not barred because Apprendi was decided three months

23   after the Ninth Circuit affirmed petitioner's conviction. Prior to Apprendi and its Ninth

24   Circuit progeny, there was a "solid wall of circuit authority," English v. United States, 42

25   F.3d 473, 481 (9th Cir. 1994), holding that a defendant's sentence under section 841 could

26   be based on a judge's finding of drug quantity at sentencing, see Nordby, 225 F.3d at 1059

27   (collecting cases). Because the court in English found that failure to raise such a "futile"

28   objection did not constitute a procedural default, and that therefore the cause and prejudice

- 4 -

1   standard did not apply, petitioner's failure to raise this issue on direct appeal did not

2   constitute a procedural default, the cause and prejudice standard does not apply, and the

3   claim is not procedurally barred.[4]

4             **2.   Merits of Apprendi Claim**

5             **a.   The government's request for a stay**

6        The government requests that the Court stay any decision on the merits of petitioner's

7   Apprendi claim pending possible en banc review of the Ninth Circuit's decision in United

8   States v. Velasco-Heredia, 249 F.3d 963 (9th Cir. 2001). It is the government's position that

9   Velasco-Heredia was wrongly decided, and the United States Attorney for the Southern

10  District of California is currently deciding whether to seek rehearing en banc of the Ninth

11  Circuit's decision in that case. A stay is not necessary in this case. Nothing in Velasco-

12  Heredia is of sufficient import to control the outcome of petitioner's section 2255 motion,

13  because any Apprendi error was harmless beyond a reasonable doubt.

14            **b.   Whether there was an Apprendi error**

15       According to the Ninth Circuit's most recent treatments of the subject, an Apprendi

16  error occurred in petitioner's case because he was "exposed" to a greater statutory maximum

17  (i.e., life imprisonment) under the Court's determination of drug quantity than he would have

18  been had the Court made no such determination.

19       In United States v. Antonakeas, --- F.3d ----, 2001 WL 682370 (9th Cir. Jun. 19,

20  2001), the Ninth Circuit found that an Apprendi error had been made when the district judge

21

22        [4]      Petitioner also raises the issue of whether Apprendi should be applied
    retroactively. New constitutional rules of criminal procedure are to be applied retroactively
23  to all cases, state or federal, pending on direct review or not yet final. Griffith v. Kentucky,
    479 U.S. 314, 328 (1987). "By 'final,' we mean a case in which a judgment of conviction
24  has been rendered, the availability of appeal exhausted, and the time for a petition for
    certiorari elapsed or a petition for certiorari finally denied." Id. at 321 n.6; see also Medeiros
25  v. Shimoda, 889 F.2d 819, 825 (9th Cir. 1989). In this case, petitioner's appeal was denied
    by the Ninth Circuit on March 29, 2000, and his petition for a writ of certiorari to the
26  Supreme Court was denied on October 2, 2000. Petitioner's conviction was not yet final
    when Apprendi was decided on June 26, 2000, and he is therefore entitled to retroactive
27  application of the new constitutional rule announced therein.

28

1  instructed the jury that they need not make any finding as to drug quantity, but then

2  proceeded to sentence the defendant in light of the judge's own finding that eight kilograms

3  of cocaine were attributable to the defendant. The court held that "the district judge's drug

4  quantity determination violated Apprendi because it increased Appellant's exposure from 20

5  years to life." Id. at *12 (citing 21 U.S.C. § 841(b)(1)(A)(ii)).[5]

6       Accordingly, there was an Apprendi error in petitioner's case.

7          **c.**    **Whether any Apprendi error was harmless**

8                    **i.**    Increase in statutory maximum sentence of imprisonment

9       Since petitioner has not procedurally defaulted on his Apprendi claim, "his sentence

10  cannot stand unless the ... constitutional Apprendi error was harmless beyond a reasonable

11  doubt." Velasco-Heredia, 249 F.3d at 968. Because petitioner was sentenced to less than

12  the 30 years authorized by each of the three counts for which he was convicted, any

13  Apprendi error in petitioner's case is harmless beyond a reasonable doubt.

14       In Antonakeas, the court held that an Apprendi error was harmless because the

15  defendant was sentenced to 14 years, which is less than the 20 years authorized under section

16  841(b)(1)(C) for possessing with intent to distribute any amount of cocaine. Antonakeas, ---

17  F.3d at ----, 2001 WL 682370, *12. The court stated that "although the sentencing judge's

18  finding of drug quantity increased the statutory maximum penalty to which Appellant was

19  exposed from 20 years to life, that increase had no effect upon the sentence that Appellant

20

---

21      [5]    See also Velasco-Heredia, 249 F.3d at 966-68 (Apprendi error occurred where

22  judge's finding resulted in a statutory maximum of 40 years even though defendant was only

sentenced to five years' imprisonment, because the judge's finding as to drug quantity

23  "exposed [the defendant] to a greater statutory maximum punishment, and did not merely

limit her sentencing discretion"); United States v. Garcia-Guizar, 234 F.3d 483, 488 (9th Cir.

24  2000) (judge's finding resulted in a statutory maximum of life imprisonment even though

25  defendant was only sentenced to 168 months); Nordby, 225 F.3d at 1059 (judge's finding

resulted in a statutory maximum of life even though defendant was only sentenced to ten

26  years' imprisonment); but see United States v. Egge, 223 F.3d 1128, 1132 n. 1 (9th Cir.

27  2000) (earlier case stating without any reasoning or analysis that "Apprendi does not apply

to this case because, while the maximum sentence that Appellant could have received was

28  20 years imprisonment, see 21 U.S.C. § 841, he was sentenced to only 41 months.").

1  has made a substantial showing of the denial of a constitutional right.
    (3) The certificate of appealability under paragraph (1) shall indicate which specific
2  issue or issues satisfy the showing required by paragraph (2).

3  28 U.S.C. § 2253(c).  Petitioner asks that the Court issue a certificate of appealability

4  pursuant to this section.

5      The Ninth Circuit has held that district courts have the authority to issue certificates

6  of appealability.  United States v. Asrar, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (as

7  amended).  The government argues that petitioner has not made a substantial showing of the

8  denial of a constitutional right and therefore, a certificate of appealability should not issue.

9  However, it is clear that petitioner has established an Apprendi error in that the Court's

10 determination as to the quantity of drugs exposed petitioner to a statutory maximum sentence

11 of imprisonment that was not authorized under the facts as found by the jury.  An Apprendi

12 error does constitute a violation of Fifth and Sixth Amendment rights.  Thus, petitioner has

13 "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 102(c)(2),

14 even though the Court finds that any denial was harmless beyond a reasonable doubt.  Cf.

15 Chapman v. California, 386 U.S. 18, 20-22 (1967) (holding that "denial of a federal

16 constitutional right" does not result in reversal of a conviction if it is harmless, but not

17 disputing that a denial of the right occurs in that instance).

18

19 **IV.    CONCLUSION**

20     For the above reasons, petitioner's section 2255 motion is DENIED.  However, upon

21 petitioner's application, this Court grants a certificate of appealability because there has been

22 a substantial showing that he was denied a federal constitutional right under Apprendi.

23 IT IS SO ORDERED.

24

25 Dated: _____, 2001

26                                                    _____
                                                     Wm. Matthew Byrne, Jr.
27                                                   United States District Judge

28

- 16 -





FILED
CLERK, U.S. DISTRICT COURT

FEB - 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

FEB - 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Enter
Closed
JS-5/JS-6 ✓
JS-2/JS-3
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff/Respondent,<br><br>v.<br><br>FULTON WASHINGTON,<br><br>Defendant/Petitioner. | CV 01 - 8491   DT ✓<br><br>CR 96 - 0557   WMB<br><br>ORDER **DENYING** PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE UNDER 28 U.S.C. § 2255 |

I.    **Introduction**

In November 1996, Defendant/Petitioner Fulton Washington ("Washington") was found guilty after jury trial of Counts 1, 2 and 3 of the indictment in CR 96-557 WMB.  The Honorable William Matthew Byrne presided over the trial.  On September 8, 1997, Judge Byrne sentenced Washington to prison for the term of life without the possibility of parole.  Judge Byrne denied Washington's motion for a new trial and a judgment of acquittal.  Washington's conviction and sentence was affirmed by the Ninth Circuit Court of Appeals on March 24, 2000.  A rehearing en banc was denied, and certiorari was denied.

On October 1, 2001, Washington filed the present petition pursuant to 28 U.S.C. § 2255.  While this petition was pending, Judge Byrne met his demise.  The petition was reassigned to the undersigned.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)



*[handwritten note:]*

1640 WHT FORD VAN
NO REAR PLATE
PASSENGE BLK 5-8 SWEATS HT SHORT HR
DRIVER 5-6, GRN SWEAT SHS

1700 55 GAL BLU DRUM LOADED

## Bureau of Narcotics Enforcement (BNE)
## Hand-written Note

This hand-written note was written February 13, 1996, at 1640 hours by Team III members. The officer/agent noticed a clear two (2") inch difference in the heighth of the two unknown suspects. The "driver" was found to be co-defendant O'Neal, having an actual heighth of five-feet four-inches (5'4"), a total of 64 inches. The passenger's height would have been a maximum of 68 inches, which is four inches taller than the driver O'Neal's heighth.

As seen on the following page, Petitioner is well over 72 inches tall——clearly not the person that the government has alleged accompanied O'Neal on February 13, 1996.

Petitioner is factually innocent of the government's allegations and instant conviction. 010244

-20-



2   back yard?

3        A    Yes, I did.  The back of the house.

4        Q    Okay.  And they gave you the description of two male

5   blacks, one of which is between five-four and five-seven, 150

6   to 165 pounds?

7        A    Yes, they did.

8        Q    Did they give you any other identifying features?

9        A    No, they did not.

10       Q    Any clothing that they were wearing?

11       A    I -- they gave me some clothing that they were

12  wearing, that I forget what -- what type of clothing.

13       Q    Okay.  And the other individual was between five-ten

14  and six foot, 165 to 185?

15       A    Approximately.

16       Q    Okay.  Now, you apparently started your surveillance

17  again the next morning?

18       A    Yes, we did.

19       Q    And at this point in time did you see two male

20  blacks get into this van and then take it to a storage area?

21       A    Did I?

22       Q    Yes.

23       A    I did not.

24       Q    You did not.  Okay.  Did some member of your team do

25  that surveillance?

26       A    Yes.

27       Q    You weren't present at the time?

28       A    I was present.

17

A    Yes, he did.

Q    What description was that?

A    They were two black males, and gave me approximate size.  And one approximately five-four to five-seven, between 150 to 165 pounds.  And the other a taller black male, probably approximately five-ten to six foot, approximately 165 to 185.

Q    Eventually you saw two individuals in this case who give a name of Beavers and Scott; is that correct?

A    Yes, I did.

Q    And you see these people in the courtroom --

A    Yes, I do.

Q    -- is that correct?

The description that Martinez gave you, was that consistent or inconsistent with Beavers and Scott?

A    I'd say that's consistent.

Q    What did Martinez tell you that he'd seen the two black male adults do at the chemical supply house?

A    I'm sorry?

Q    What did Martinez say he had seen the two black male adults do at the chemical supply house?

A    Loading some chemicals, ether, iodine and other -- other chemicals, into a white van.

Q    Regarding the ether, did he describe to you what size container the ether was in, anything like that?

A    I believe so.  It was 55-gallon drums.

Q    From your experience, is ether used in the clandestine manufacture of PCP?

A    Yes, it is.





Name: WASHINGTON, FULTON LEROY

← Petitioner Washington's Height

← Missing Suspect "Passenger's" Height

← Co-defendant O'Neal's (Driver) Height

Supplied TO Washington
ON 7-30-04.
F. Owen /
CCC - NA



Line G
RI-96-0095
(714) 267-0847

DATE: 2 10 96                    TAPE # NG - 6                    CALL # 055

MONITOR NAME: D'Arcy                    AGENT INITIALS _____

CALL START TIME 931            CALL END TIME 943

NUMBER DIALED: 316 923 2342

PAGER CALL BACK NUMBER _____        CODE _____

CALL:    INCOMING        OUTGOING    NO CONVERSATION: (X) _____

PERTINENT CALL: (X) X        DRUG/MONEY RELATED: (X) X

CALL REGARDING NON-DRUG CRIME: (X) _____    CALL MINIMIZED: _____

CALLER: Freddy                    CALLED: T

SUMMARY: _____

Freddy says no T monday it
is on. As he kitchen you
better have your things ready
monday night. The three of us
will go up like last time. "The
Dude" said he would get us
an extra one of those "Zing Zangs"
Talking Basketball.

Freddy said Pete wanted to give him
a deal. He said that between them
them have to get 10 to 15     Fred said
Faco said we has to do it at least
2 times in 90 days. Get all my money from
This one Then Turn it around get money to
Pete + Do another one.

## CALL SHEET CONTINUATION

DATE: ___2 10 96___          TAPE # N_6_6___   CALL # _055_

YA YA is gong to get ne
Truck and we so and do it.
Get that list.
FREDDY MIKS about getting an
Altima.
I let me call you back.



IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. No. 97-50539 |
| Plaintiff-Appellee, | ) | D.C. No. CR 96-556-WMB |
| | ) | (Central Dist. Cal.) |
| | ) | |
| v. | ) | PLAINTIFF-APPELLEE'S |
| | ) | UNOPPOSED MOTION FOR |
| FULTON L. WASHINGTON, | ) | EXTENSION OF TIME TO FILE |
| | ) | ANSWERING BRIEF; DECLARATION |
| Defendant-Appellant. | ) | OF YVETTE M. PALAZUELOS |
| | ) | |

Plaintiff-Appellee United States of America, pursuant to
Federal Rule of Appellate Procedure 27 and Ninth Circuit Rule of
Practice 31-2.2 (b), and through its attorney of record Assistant
United States Attorney Yvette M. Falazuelos respectfully requests
this court to grant a thirty-day extension of time until July 30,
1999, within which to file its answering brief.  Counsel for
defendant Fulton L. Washington does not oppose this request.  No
previous extensions have been sought by plaintiff-appellee.

//

//

//

//

//

//

//

//

//

//

//

This motion is based upon the files and records of this case and the attached declaration of Assistant United States Attorney Yvette M. Palazuelos.

DATED:     June 14, 1999

                              Respectfully submitted,

                              ALEJANDRO N. MAYORKAS
                              United States Attorney

                              GEORGE S. CARDONA
                              Assistant United States Attorney
                              Chief, Criminal Division

                              YVETTE M. PALAZUELOS
                              Assistant United States Attorney

                              Attorneys for Plaintiff-Appellee
                              UNITED STATES OF AMERICA

2

## DECLARATION OF YVETTE M. PALAZUELOS

I, Yvette M. Palazuelos, hereby declare the following:

1.    I am an Assistant United States Attorney (AUSA) in the Central District of California and am assigned to the Narcotics Section of that office.  I am responsible for preparation of the government-appellee's answering brief in the case of United States v. Fulton L. Washington, C.A. No. 97-50539.  I have knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto under oath.

2.    Defendant Fulton L. Washington ("defendant") was convicted by jury of various narcotics offenses in November, 1996.  During the three years that followed, the district court held hearings concerning defendant's sentencing over eight days and hearings concerning defendant's motions for judgment of acquittal pursuant to Rule 20 of the Federal Rules of Criminal Procedure ("Rule 29"), for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"), and for a motion to correct transcripts under Rule 10(e) of Federal Rules of Appellate Procedure over twelve days.  Although defendant was sentenced in October 1997, the last of the post-trial hearings did not occur until April 6, 1999.  The sentencing hearings were numerous and both defendant and the government presented expert testimony and extensive briefing in support of their respective positions.  The post-trial Rule 33 and Rule 29 motion hearings were numerous and extensive, mainly because the Rule 33 motion involved allegations of ineffective assistance of trial counsel.

3

At the hearings, the district court heard testimony from
defendant, defendant's trial counsel, two defense investigators,
two family friends who presented an alibi for defendant, one
additional family friend, and two government witnesses.  Both the
government and defendant also filed numerous pleadings in
connection with the Rule 29 and Rule 33 motions.  The district
court finally issued two written orders denying defendant's Rule
29 and 33 motions on April 27, 1999.

3.    Pursuant to this court's briefing schedule, defendant
served his 60-page opening brief upon me on or about June 1,
1999.  At the time I was served, I was preparing for a month-long
trial before the Honorable William D. Keller, United States
District Judge, in United States v. Gonzalez et al, CR 98-612(B)-
WDK, scheduled to commence on June 8, 1999.  Ultimately, the
defendants pleaded guilty, the last pleas having been entered the
day before trial on June 7, 1999.

4.    My first opportunity to examine defendant's brief was
on June 8, 1999.  Defendant's opening brief raised numerous
issues including pre-trial issues (denial of motion for severance
and denial of motion to exclude fingerprint evidence due to
destruction of evidence), insufficiency of the evidence on all
counts of conviction, jury instruction issues ("mere presence,"
"misidentification" and "substantial step"), sentencing issues
(constitutionality of 21 U.S.C. 851(e) and quantity
calculations), denial of a new trial motion based upon
ineffective assistance of counsel (alleged failure to investigate

4

alibi, alleged lack of trial preparation, alleged failure of
consult to consult with defendant) and the court's denial of
defendant's motion to correct transcript.

5.    By order of this court filed on May 6, 1999, the
government's answering brief currently is due on June 30, 1999.
The government has not sought any prior extensions in this
matter.

6.    Since June 8, 1999, I have worked on the instant appeal
by reviewing the extensive trial and post-trial transcripts. I
have already noted a transcript which the government will need to
designate which defendant did not designate and have arranged for
the preparation of the transcript.  According to the court
reporter, the transcript can be finished by July 2, 1999.  The
post-trial proceedings in this matter extended from 1997 through
April 1999. Because the post-trial record and pleadings are so
extensive, I do not anticipate that I will be able to file the
brief until the end of July 1999.  Additionally, as a member of
the Narcotics Section, I am currently responsible for the
following investigations and cases that will require my attention
during June and July:

a.    An active methamphetamine investigation into freon
brokers and the chemical companies from which the brokers obtain
their freon.   This was a wiretap investigation which has
continued for one year and resulted in four indictments.
Additional investigation is required in the form of witness
interviews, coordination of additional undercover work and at

5

least one possible wiretap over the telephone of a another chemical company.

b.  An active cocaine investigation involving two wiretaps.  The government's investigation is part of larger nationwide investigation involving at least 10 districts.

c.  An active investigation involving numerous interviews, coordination with two other districts and private entities and their private security departments/police.

d.  An investigation that developed into a "historical" cocaine investigation.

e.  Pretrial motion work in the case <u>United States v. Vera</u>, CR 95-654-WDK, a case with no trial date pending due to extensive motion practice.  Pursuant to court order, discovery issues are to be briefed by the defendant and the government during the last week of June 1999.

f.  Pretrial work in <u>United States v. Narayan</u>, CR 99-70-WDK, a case set for trial on August 31, 1999.

g.  Oral argument on July 12, 1999 in <u>United States v. Mangram</u>, CA 95-50510.

h.  Response to a defendant's § 2255 motion which is due on August 9, 1999.

7.  The attorney who co-tried the underlying criminal case with me, AUSA Patrick Fitzgerald, will assist me in preparing the government's answering brief.  However, based upon his work commitments, AUSA Fitzgerald will also need additional time to assist me in completing the brief.  I spoke to AUSA Fitzgerald

6

who told me that the following cases will require his attention during June and July:

     a.   A trial starting on June 22, 1999 which should last at least one week.

     b.   Grand jury work, including the presentation of a witness on June 30, 1999, in an active ongoing investigation.

     c.   A lecture to 150 prosecutors in San Francisco on July 14, 1999.

    8.   Additionally, AUSA Fitzgerald had pre-planned annual leave from July 3, 1999 through July 18, 1999 (except for the presentation to prosecutors in San Francisco on July 14, 1999).

    9.   This is the first extension requested by the government in this matter.  The government expects that the brief will be filed by the requested due date of July 30, 1999.

    10.  Defendant-appellee is currently serving a term of life imprisonment.

    11.  On or about June 8, 1998, I spoke to defense counsel, Karen R. Smith, Esq., about this application.  Ms. Smith informed me telephonically that she has no opposition to this motion.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this 18th day of June 1999, at Los Angeles, California.

YVETTE M. PALAZUELOS

7

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 97-50498 |
| | ) | |
| Plaintiff-Appellee, | ) | PLAINTIFF-APPELLEE'S UNOPPOSED |
| | ) | MOTION FOR EXTENSION OF TIME |
| v. | ) | TO FILE ANSWERING BRIEF; |
| | ) | DECLARATION OF YVETTE M. |
| FULTON L. WASHINGTON, | ) | PALAZUELOS |
| | ) | |
| Defendant-Appellant. | ) | |

I, MICHELLE TABB       declare:

That I am a citizen of the United States and a resident of Los Angeles County, California; that my business address is 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18 years, and am not a party to the above-entitled action; that on June 18, 1999, I caused to be deposited in the United States mails in Los Angeles, California, in the above-entitled action, in an envelope bearing the requisite postage, a copy of: PLAINTIFF-APPELLEE'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE ANSWERING BRIEF; DECLARATION OF YVETTE M. PALAZUELOS

addressed to      KAREN SMITH
                  675 South Westmoreland
                  Los Angeles, CA 90005

at HER last known address, at which place there is a delivery service by United States mail.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  This 18th day of JUNE, 1999.

                                    MICHELLE TABB



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

**JUN 0 5 2007**

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>FULTON LEROY WASHINGTON,<br><br>Defendant - Appellant. | No. 06-55263<br><br>D.C. Nos. CV-01-08491-DT<br>CR-96-00557-WMB-4<br>Central District of California,<br>Los Angeles<br><br>ORDER |

Before:    SILVERMAN and CALLAHAN, Circuit Judges.

The motion for reconsideration is denied.  *See* 9th Cir. R. 27-10.

A motion to reconsider an order issued pursuant to Circuit Rule 27-7 by a deputy clerk, staff attorney, circuit mediator, or appellate commissioner is initially directed to the individual who issued the order.  If that individual is disinclined to grant the requested relief, the motion for reconsideration shall be processed as follows: (new 1-1-04)

    (1)  if the order was issued by a deputy clerk or staff attorney, the motion is referred to an appellate commissioner;

    (2)  if the order was issued by a circuit mediator, the motion is referred to the chief circuit mediator;

    (3)  if the order was issued by an appellate commissioner or the chief circuit mediator, the motion is referred to a motions panel.

## CIRCUIT ADVISORY COMMITTEE
## NOTE TO RULE 27-10

*Motions for clarification, reconsideration or rehearing of orders entered by a motions panel are not favored by the Court and should be utilized only where counsel believes that the Court has overlooked or misunderstood a point of law or fact, or where there is a change in legal or factual circumstances after the order which would entitle the movant to relief.  (rev. 1-1-04)*

## CIRCUIT RULE 27-11

### MOTIONS; EFFECT ON SCHEDULE

(a)  Motions requesting the types of relief noted below shall stay the schedule for record preparation and briefing pending the court's disposition of the motion: *(Rev., 01-01-2003)*

    (1)  dismissal; *(Rev., 01-01-2003)*
    (2)  transfer to another tribunal; *(Rev., 01-01-2003)*
    (3)  full remand;
    (4)  in forma pauperis status in this court; *(Rev., 01-01-2003)*
    (5)  production of transcripts at government expense; and *(Rev., 01-01-2003)*
    (6)  appointment or withdrawal of counsel. *(Rev., 01-01-2003)*

(b)  The schedule for record preparation and briefing shall be reset as necessary upon the court's disposition of the motion.  Motions for reconsideration are disfavored and will not stay the schedule unless otherwise ordered by the court. *(Rev., 01-01-2003)*

## CIRCUIT RULE 27-12

### MOTIONS TO EXPEDITE

Motions to expedite briefing and hearing may be filed and will be granted upon a showing of good cause.  "Good cause" includes, but is not limited to, situations in which: (1) an incarcerated criminal defendant contends that the valid guideline term

FILED

UNITED STATES COURT OF APPEALS

FEB 01 2007

FOR THE NINTH CIRCUIT

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 06-55263 |
| Plaintiff - Appellee, | D.C. Nos. CV-01-08491-DT |
| v. | CR-96-00557-WMB-4 |
| FULTON LEROY WASHINGTON, | Central District of California, Los Angeles |
| Defendant - Appellant. | ORDER |

Before:     PAEZ and BYBEE, Circuit Judges.

The request for a certificate of appealability is denied. *See* 28 U.S.C.
§ 2253(c)(2). All pending motions are denied.

Delivered ~~on~~ to N/A unit on 2/5/07.

*[signature]*

FULTON LEROY WASHINGTON
Federal No. 08204-112
U.S. Penitentiary
3901 Klein Blvd.
Lompoc, CA 93436-2706

in Pro Se

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | CASE NO. CV-01-08491-DT |
|        Plaintif,    ) |           CR-96-0557-WMB-4 |
|           ) | |
|    v.      ) | [Proposed] ORDER |
|           ) | |
| FULTON LEROY WASHINGTON,   ) | |
|           ) | |
|        Defendant.   ) | |

After the Court having reviewed Motions, Appendixes, files and records presented to this Court, a determination is made that Defendant has made proper representation of his facts and law, therefore, the Court FINDS AND ORDERS as follows, that the District Court in its view, verifies that there was a violation of F.R.C.P, Rule 63, by:

1. Failing expressly to certify his familiarity with the record.

2. Failing to consider post-trial decisions, rulings and orders by the original trial court.

3. Failing to give opportunity for the Defendant and the Plaintiff to brief the Court on disputed facts.

4. Failing to address all issues raised in Defendant's habeas corpus § 2255.

5. Failing to hold evidentiary hearings.

-1-

6. Failing to resolve disputed fact of "erroneous" trial evidence of co-defendant O'Neal.

It is hereby ORDERED Defendant's motion is GRANTED. The February 2, 2006 denial of habeas corpus relief pursuant to § 2255, and the following February, 2007 denial of reconsideration pursuant to Rule 59, are ordered VOID JUDGMENTS, allowing Defendant's timely filed habeas corpus to proceed according to the due process of law.
IT IS SO ORDERED.

DATED:_____          _____
                                 Signed, District Court Judge

# *Certificate of Service*

I, FULTON WASHINGTON _____, hereby certify that I have served a true and correct copy of the following, by placement in the inmate mail: RE: No. (s)CV-01-08491-DT;
CR-96-0557-WMB-4

Motion pursuant to F.R.Cv.P., Rules 63; 60(b)(4)/60(b)(6) and attached [Proposed] Order.


One original and two copies to the Court, one copy to AUSA Yvette Palazuelos and Patrick R. Fitzgerald, U.S. Atty.'s Office.
cc: file

**Service of process is deemed complete at the time of delivery to the prison authorities for forwarding to the Court.** *Houston v. Lack* 101 L.Ed..2d. 245 (1988) confirms that by such service upon the parties to litigation and or his/her attorney of record, by placement in a sealed, postage prepaid envelope addressed to:

Clerk
U.S. District Court
Central District of California
312 N. Spring St.
Los Angeles, CA 90012

AUSA Yvette Palazuelos
312 N. Spring St.
Los Angeles, CA 90012
(Last known address)

Patrick R. Fitzgerald
USLA U.S. Attorney's Office
312 N. Spring St., Ste. 1200
Los Angeles, CA 90012


**and deposited in the United States Mail maintained by the FPC Lompoc, Lompoc, California, all requirements of service of process required by law have been fulfilled this:**

_____6 th_____ day of __July__ , 20 07 .

**United States Penitentiary**
**3901 Klein Boulevard**
**Lompoc, CA 93436**

(Name) _Fulton Washington_
Fulton Washington.

08204-112
Bureau of Prisons Identification Number

Fulton Leroy Washington
Reg. #08204-112
U.S. Penitentiary
3901 Klein Blvd.
Lompoc, CA. 93436

July 6th, 2007

Clerk of Court
United States District Court
Central District of California
312 North Spring Street
Los Angeles, CA. 90012

Dear Clerk of Court:

It has recently come to my attention district Court Judge Dickran M. Tevrizian, Jr. no longer sits as a district court judge. The enclosed motion calls into question the judges recent findings of facts and conclusions of law as successor judge following the death of Honorable Judge Byrnes. This is a factual and actual innocence case with enormous files and records. The case deserves the attention of the Chief Judge for proper placement. Would you please forward to Chief Judge for review.

P.S. Please forward to above named address notice of reciept and date filed.
Thank You!

Thank You in Advance,

Fulton Leroy Washington
Fulton Leroy Washington